[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 2726
I.
Introduction and Factual Background
The plaintiff, County Wide Home Improvement Maintenance Co., Inc. Money Purchase Pension Plan (hereinafter, referred to as "County Wide") has filed the instant action seeking review of a decision by the defendant Planning and Zoning Commission of the Town of Southington (hereinafter, referred to as "the Commission") denying its April 11, 1991 application for subdivision approval for a parcel of land known as Lot 71 Southington Chase section Four #40 Erica Court, Southington, Connecticut.
The lot is part of a larger subdivision that was initially approved in January 1982. At that time, the subject lot was deemed "[n]ot a Building Lot at this Time". (Return Items D, I). In 1987, the Flanders Corporation, the agent of County Wide (see, oral stipulation of parties at trial), applied for both subdivision and inland wetlands approval for said lot with the Commission.[1] The Commission denied both applications on January 8, 1988. (Return Item D).
An appeal of the planning decision was taken to this court which sustained the Commission's denial. Thereafter, another application was filed for inland wetlands approval with the Conservation Commission, the new inland wetlands agency, and that application, seeking to fill and grade the lot, was granted. (Return Item D). The instant application was filed after said court decision and Conservation Commission approval. (Return Item B).
The Commission first discussed the subject application at its June 18, 1991 meeting, but tabled action to allow the Town Planner to obtain information for the Commission members. (Return Items D, E). A request for a 65 day extension was filed by the applicant on July 1, 1991, and the Commission next discussed the application at its August 6, 1991 meeting. (Return Items F, G, H, I). The Commission tabled action at that time as certain members expressed interest in viewing the property. The Town Planner indicated that both he and the CT Page 2727 Town Engineer recommended approval. (Return Item I).
The Commission next debated the application at its August 20, 1991 meeting. The Town Planner reviewed the history of the lot. Commissioner Klemovitch, as well as the Town Planner, noted that a recent inspection indicated that the lot was dry. Commissioner Oshana was concerned that the lot had been used as a drainage area for the subdivision. (Return Items J; L). The Town Engineer indicated that as the lot is
 basically dry during a good part of the year, [i]t does not really function too well as a wetland any longer. It was my opinion when the original subdivision was installed that if the storm drainage was installed as shown, then there was no reason not to approve the lot at that time. And, that is still my opinion.
Commissioner Longo indicated that as the house would be located in wetlands, she would oppose the permit request. A vote to approve the application was rejected 4-3 and a vote to deny the application was approved 4-3. (Return Item J). The applicant was notified of the denial on September 6, 1991, (Return Item K) and the instant appeal was filed returnable October 22, 1991.
 II.
Discussion
 A.
General Statutes 8-8(a) restricts those people that may appeal a Commission decision to those who are either aggrieved by a decision of the Commission or those who own land which abuts . . . the land involved in the decision. Aggrievement must be both properly pleaded and proved. Walla v. Planning and Zoning Commission, 176 Conn. 475, 479 (1979). The plaintiff introduced its deed (Exhibit A) to the subject property at the hearing and the parties stipulated that the plaintiff owns the property and that Flanders Corporation is its agent. This court finds that the plaintiff has a specific and personal interest which has been injuriously affected by CT Page 2728 the Commission's decision and is, therefore, aggrieved. Bossert Corporation v. Norwalk. 157 Conn. 279, 285 (1968).
 B.
In acting on an application for a subdivision, a commission acts in an administrative capacity. J M Realty Co. v. Norwalk, 156 Conn. 183, 190 (1968). The commission is controlled by the regulations it has adopted, and, if the plans conform to existing regulations the commission has no discretion or choice but to approve them. Baron v. Planning and Zoning Commission, 22 Conn. App. 255, 256 (1990) citing Westport v. Norwalk, 167 Conn. 151, 157 (1979). A planning commission cannot disapprove a subdivision application for a reason or, based upon a standard, not contained in the regulations. RK Development Corporation v. Norwalk, 156 Conn. 369,377 (1968). Thus, where the application meets the existing regulations, the commission must give its approval. Id., 376.
The essential question then is whether the commission's decision is reasonably supported by the record, and if so, the court should not substitute its judgment for that of the commission. Westport v. Norwalk, supra, 161.
General Statutes 8-26 requires that "the grounds for its action shall be stated in the records of the commission." It is clear that the commission did not formally state its reasons. (Return Item J). Rather, individual members stated their own reasons for their respective vote.[2] The court is therefore required to search the record to discover if there is sufficient reason to support the action. Zieky v. Town Plan and Zoning Commission, 151 Conn. 265, 268 (1963).
 C.
A review of this record indicates that the only possible grounds for disapproval was the belief that the lot was still wet and functioned as a drainage area. (Return Items I, J). The Town Engineer and the Town Planner, however, both recommended approval. A review of the site plan (Return Item L), does show the drainage easements, the wetlands, the pro posed grading, the existing ponding on Lot 21 (the eastern neighbor to the subject parcel), etc. There is no question that the house is shoe-horned into the lot. Yet, other than general statements about public health and safety, this court CT Page 2729 can find no specific regulation upon which the Commission has based its denial. (Return Item M). General policy statements pertaining to public health and safety made in regulations do not provide a sufficient basis for rejection of a subdivision permit. TLC Development, Inc. v. Planning and Zoning Commission,215 Conn. 527, 533 (1990); Sowin Associates v. Planning and Zoning Commission, 23 Conn. App. 370, 376 (1990) cert. denied, 216 Conn. 832 (1990).
This court recognizes that commission members can consider facts which they learn by personal observation of the property and, at least some members, as indicated by the record, did indeed inspect the property. Forest Construction Co. v. Planning and Zoning Commission, 155 Conn. 669, 675
(1975). In this case, however, with the only conceivable reason being the wetness of the lot (if, indeed, it is the reason) this court believes, in light of the testimony of the Town Engineer, that the rule of Feinson v. Conservation Commission,180 Conn. 421, 428 (1980) applies, namely: "if an administrative agency chooses to rely on its own judgment [on a technically complex matter], it has a responsibility to reveal publicly its special knowledge and experience, to give notice of the material facts that are critical to its decision, so that a person adversely affected thereby has an opportunity for rebuttal at an appropriate stage in the administrative proceedings. This court finds that not only did the Commission not do this but that the applicant has not failed to meet any specific regulation.
 D.
This court cannot, however, sustain the appeal. General Statutes 8-26 states, in part that,
 If an application involves land regulated as an inland wetland or watercourse under the provisions of chapter 440, the applicant shall submit an application to the agency responsible for administration of the inland wetlands regulations no later than the day the application is filed for the subdivision or resubdivision. The commission shall not render a decision until the inland wetlands agency has submitted a report with its final decision to CT Page 2730 such commission. In making its decision the commission shall give due consideration to the report of the inland wetlands agency."
Counsel stipulated that when this application was filed, the applicant did not file a copy with the Conservation Commission. The plaintiff argues that such a filing is not necessary as the Conservation Commission had previously issued a permit. There certainly is no question that an inland wetlands permit was issued but the record only reflects the number of the permit (I.W. #364), not the date nor the specific activity. (Return Items D, I. J). The statute requires a commission to not render a decision until it receives a report with a final decision and to give due consideration to that report. There is nothing in this record that would indicate that the Conservation Commission reviewed this specific proposal (emphasis supplied).
A review of the site plan reveals that the house is approximately twenty feet upgradient from the wetlands and the driveway is in one area perhaps one foot from the wetlands. The site plan also shows a 25 foot regulated area which goes through the house.[3] This may or may not be totally acceptable to the inland wetlands agency. There is simply no way of knowing what that agency's position is as the plaintiff and the defendant failed to comply with the statutory mandate.
The directive to submit an application to the wetlands agency was enacted in P.A. 77-545 and amended in P.A. 87-533. The history is extensively discussed in Arway v. Bloom, 29 Conn. App. 469 (1992), a case which discusses the meaning of the inland wetlands agency report. See also, Ventres v. Inland Wetlands and Watercourses Commission,25 Conn. App. 572, 575 (1991). The burden is on the applicant to file the application. In this particular case, such a submittal and response may well have changed the outcome of the Commission's vote.
As noted by the Arway court, the legislation was enacted, in part, to "keep a developer from . . . dangling in the winds between a wetlands agency and a planning commission. . . . This way the applicant would not, as some have, go all through the subdivision procedure, get his approval and then find he could not get a building permit because he failed to CT Page 2731 get approval from the wetlands agency." Id., 476-477, citing Rep. Polinsky, 20 H.R. Proc., Pt. 6, 1977 Sess., pp. 2411-12. County Wide can thus not be heard to complain.
 III.
Conclusion
In light of this court's findings, as discussed above, this appeal must be dismissed. In the event the application is resubmitted, to both commissions, the planning commission should heed this court's instruction to specify the basis upon which it acts.
MARSHALL K. BERGER, JR. JUDGE, SUPERIOR COURT