## ANNA ROLLER SCHUCHMANN *v.*
## CITY OF MILFORD ET AL.
## (15275)

Spear, Hennessy and Shea, Js.

Argued December 6, 1996—officially released February 25, 1997

*Matthew B. Woods*, with whom was *Cynthia C. Anger*, assistant city attorney, for the appellants (defendants).

*John F. Fallon*, with whom, on the brief, was *Robert Hoyt*, for the appellee (plaintiff).

SHEA, J. In this action, the plaintiff, Anna Roller Schuchmann, sought a writ of mandamus ordering the defendant sewer commission of the city of Milford to approve her application for a sewer permit for property at 952 Boston Post Road, which she and other members of her family owned.[1] The commission had denied the application on the ground that the sewage being discharged from businesses on adjoining land also owned by plaintiff and her family already exceeded the limit established by the Milford sewer regulations for the acreage of both the adjoining property and the land that was the subject of the application. The trial court concluded that the regulations did not prohibit the issuance of a sewer permit for that property and ordered the commission to issue the permit. The defendants, the city, the sewer commission and the individual commissioners, have appealed from the judgment. The principal issue raised in the appeal involves the application to subdivided land of sewer regulations that limit the volume of sewage that may be discharged into the municipal sanitary sewerage system from a particular property according to its acreage and its zoning classification.

The trial court held that a subdivided parcel was entitled to a sewage discharge permit for the estimated quantity of sewage to be generated from the proposed use of that parcel as long as the limit established by the sewer regulations for its acreage and zoning classification was not exceeded. The court ruled that the circumstance that, as a result of the subdivision, the quantity of sewage being discharged from the two build-

---

[1] The plaintiff and other members of her family own 952 Boston Post Road and the adjoining land as tenants in common. Only the plaintiff applied for the sewer permit and brought this action.

ings on the remainder of the land owned by the plaintiff would exceed the limit applicable to its reduced acreage did not affect her entitlement to a sewer permit for the subdivided parcel based on its acreage and zoning classification as provided by the regulations. We agree with that determination. As another ground for its judgment, the court ruled that the provision of the sewer regulations on which the defendant commissioners had relied did not apply to commercial property, such as 952 Boston Post Road. Although we affirm the judgment, we disagree with that conclusion.

There is no dispute about the facts. The plaintiff owns a triangular parcel of land, approximately one acre in area, situated at the intersection of Boston Post Road and Locust Street in Milford, on which there are three commercial buildings known as 952, 962 and 972 Boston Post Road. The building at 952 Boston Post Road is presently vacant, but the plaintiff proposes to lease it for use as a retail bakery and coffee shop, for which she needs a sewer permit. A pizza restaurant is operated in the building at 962 Boston Post Road, and other businesses are conducted at 972 Boston Post Road.

In May, 1993, the plaintiff applied to the Milford sewer commission for a permit to connect a proposed retail bakery and coffee shop at 952 Boston Post Road to the existing sewerage system. A lateral sewer pipe extends from the main sewer line in Locust Street almost to the street line at the rear of that building. The defendants have not controverted the statement in the plaintiff's brief that the building is connected to the sewerage system and that the commission has allowed it to use the system in the past. The commission denied the application because the estimated additional sewage that would have been generated by the proposed business would have caused the total quantity of sewage from the three buildings on the property to exceed the amount allowed by the sewer regulations for the

acreage of the property. The plaintiff did not appeal from that determination.

In August, 1993, the plaintiff applied to the Milford planning and zoning board for permission to subdivide the entire property on which the three buildings are located into two one-half acre[2] parcels. The building at 952 Boston Post Road would be situated on the west parcel, and the other two buildings would be on the east parcel. The city engineering bureau approved the map filed with the application and the planning and zoning board approved the subdivision application on September 7, 1993. No representative of the sewer commission appeared at the public hearing to oppose the plaintiff's application for the subdivision.

On January 10, 1995, more than one year later, the plaintiff once again applied to the Milford sewer commission for permission to connect the building at 952 Boston Post Road to the main sewer line in Locust Street for the proposed use of operating a retail bakery and coffee shop. The application indicated that the estimated sewage that would be discharged into the sewerage system would be 587 gallons per day and that the maximum daily discharge allowed by the sewer regulations for a one-half acre property was 764 gallons. On March 2, 1995, at the conclusion of the public hearing on the application, the commission voted to deny the application on the ground that the additional sewage from the two buildings on the east parcel, when added to that to be discharged from the proposed bakery and coffee shop, would exceed the amount allowed by the regulations for the entire property. The commissioners were not persuaded that the plaintiff, despite the subdivision, was entitled to have the two parcels considered

---

[2] The total area of the entire parcel of land was 0.999 acres. After the subdivision, the west portion, on which 952 Boston Post Road was situated, contained 0.51 acre and the east portion contained 0.489 acre.

separately for the purpose of determining the maximum sewage discharge limit under the regulations.

Because there is no provision for an appeal from the denial of a sewer permit application by the Milford sewer commission, the plaintiff brought this mandamus action seeking an order directing the sewer commission to issue a sewer permit for 952 Boston Post Road in accordance with her application. The trial court held that, because the property was now subdivided, the sewer commission could not lawfully add the amount of sewage from the buildings on the east parcel to the estimated amount of discharge from 952 Boston Post Road in determining whether the regulations would be violated by granting the permit. Since it was undisputed that the maximum discharge limit would not be exceeded without the addition of the sewage generated by the buildings on the east parcel, the court ordered the sewer commission to issue the permit.

I

The charter of the city of Milford provides for the appointment of a sewer commission of five members and vests in that commission "all the rights, duties and authority of sewer commissions as set out in the general statutes." Milford City Charter, art. IV, § 9. That commission also acts as the city's water pollution control authority pursuant to General Statutes § 7-247,[3] which

---

[3] General Statutes § 7-247 provides in relevant part: "Powers of water pollution control authority to acquire, construct and operate sewerage system. Obligation to consider feasibility of sewage as energy source. Any municipality by its water pollution control authority may acquire, construct and operate a sewerage system or systems; may enter upon and take and hold by purchase, condemnation or otherwise the whole or any part of any real property or interest therein which it determines is necessary or desirable for use in connection with any sewerage system; may establish and revise rules and regulations for the supervision, management, control, operation and use of a sewerage system, including rules and regulations prohibiting or regulating the discharge into a sewerage system of any sewage or any stormwater runoff which in the opinion of the water pollution control author-

authorizes such an agency to "establish and revise rules and regulations for the supervision, management, control, operation and use of a sewerage system, including rules and regulations prohibiting or regulating the discharge into a sewerage system of any sewage or any stormwater runoff which in the opinion of the water pollution control authority will adversely affect any part or any process of the sewerage system . . . ." This provision does not vest the commission with the discretion to deny an application that complies with its regulations because of considerations not set forth in the regulations, but requires that the statutory powers of a water pollution control authority be exercised through the regulations it is directed to adopt.

The commission claims that it was entitled to ignore the decision of the planning and zoning board approving the subdivision that separated 952 Boston Post Road from the remainder of the plaintiff's property because the plaintiff has circumvented its decision denying her first application, at which time the sewage discharge from the entire property had to be considered. It claims that in 1985 regulations were adopted at a public hearing that were designed to prevent landowners from discharging amounts of sewage exceeding the capacity of the sewerage system and causing overflows and backflows that would endanger the public health. The regulations allocated to each property, according to its acreage and its zoning classification in 1985, a maximum volume of sewage discharge that could not be increased. The commission relies on the following provision of the adopted regulations: "Any parcel of land

ity will adversely affect any part or any process of the sewerage system; may enter into and fulfill contracts, including contracts for a term of years, with any person or any other municipality or municipalities to provide or obtain sewerage system service for any sewage, and may make arrangements for the provision or exchange of staff services and equipment with any person or any other municipality or municipalities, or for any other lawful services. . . ."

proposed to increase the density of its use must submit calculations indicating that the outflow of sewage from the proposed use will be the same as or less than the present existing zoning classification will allow . . . ."[4] For a commercial zone, such as that in which the plaintiff's property is situated, the regulations establish a limit of "1500 gallons per day per acre multiplied by the total acreage." No provision of the regulations, however, authorizes the commission to deny an application for a sewer permit by an owner of property that conforms to the sewage limit applicable to its acreage and zoning classification simply because other property of the owner violates the regulations.

It is undisputed that the sewer commission regulations establish 1500 gallons per day as the maximum amount of sewage per acre that a commercially zoned property may discharge into the sewerage system. The west parcel, on which 952 Boston Post Road is situated, comprises 0.51 acre and, therefore, would have a sewage discharge limit of 764 gallons per day. The plaintiff's application indicated that the proposed use would generate 554 gallons of sewage per day in addition to the prior water usage of 33 gallons per day, resulting in a total sewage discharge of 587 gallons per day, an amount substantially less than the limit applicable to the property.

The concern of the commission that the subdivision of property not have the consequence of enabling a property owner to circumvent the sewage discharge

---

[4] The adopted regulation provides: "Any parcel of land proposed to increase the density of its use must submit calculations indicating that the outflow of sewage from the proposed use will be the same as or less than the present existing zoning classification will allow, i.e., one-family residential use proposed to multi-family use is computed on the maximum allowable single-family structures times 300 gallons per day per one-family residential structure. The total from this in gallons per day must be the limiting factor on the number of dwelling units in the proposed multi-family use, taking into consideration the use of water-saving devices."

limits established by the regulations might properly have been voiced at the hearing on the subdivision creating 952 Boston Post Road as a separate parcel. The sewer commission was given notice of the hearing by letter as well as by publication. The fact that the sewage discharge from buildings on the remaining property of the plaintiff will substantially exceed the limit for the reduced acreage of that property resulting from the subdivision, however, does not authorize the denial of a sewer permit for a property well within its sewage discharge limit. There is nothing in the record before us to indicate that the sewer commission is precluded from enforcing the discharge limits with respect to any properties that exceed those limits.

It is familiar law that, for the plaintiff to prevail in an action of mandamus, she must establish three elements: "(1) that [she] has a clear legal right to the performance of a duty by the defendant; (2) that the defendant has no discretion with respect to performance of that duty; and (3) that the plaintiff has no adequate remedy at law." (Internal quotation marks omitted.) *Harlow* v. *Planning & Zoning Commission,* 194 Conn. 187, 196, 479 A.2d 808 (1984). Since this plaintiff's application complied with the sewer regulations governing the amount of sewage that may be discharged into the sewerage system from 952 Boston Post Road, the defendant sewer commission clearly had a duty to issue the necessary sewer permit. The commission had no discretion to refuse to issue a permit when the application complied with the regulations that it had promulgated, as we have determined. The defendant has suggested no *legal* remedy available to the plaintiff, and this court is aware of none.

## II

As an additional ground for the judgment, the trial court opined that the provision of the regulations[5]

---

[5] See footnote 4.

requiring that a property not exceed the sewage discharge limit applicable to its acreage and zoning classification does not pertain to commercial properties, such as 952 Post Road. That conclusion was based on the fact that the only example given in that provision of the application of the regulations related to residential property. We construe that provision of the regulations to apply to all the zoning classifications of property for which other provisions establish maximum sewage discharge limits, as is true of commercial property. It would serve no purpose to establish such limits for nonresidential property if the regulations applied only to residential property. The example of how the discharge limit would apply to residential property was intended to be illustrative, not exclusive. In their briefs both parties agree that the example given in the regulation does not have the effect of removing commercial property from the application of the sewer regulations.

The judgment is affirmed.

In this opinion the other judges concurred.