[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Both the plaintiffs and defendants move for summary judgment in this petition for a writ of mandamus.
There is no genuine dispute as to the following facts. The plaintiffs, Bounheuang Siriphol and Keomanivanh Sengsavanh, applied for and received a marriage license from the Killingly registrar of vital statistics. Under that license, on November 16, 1992, the plaintiffs were married. The groom, who had previously cohabited with another woman in Laos for more than ten years, learned that this CT Page 1965 cohabitation might constitute a common-law marriage under Laotian law. He traveled to Laos and secured a divorce from his common-law wife. Concerned that their marriage was invalid because of the Laotian common-law marriage, the plaintiffs obtained a marriage license from the Brooklyn registrar of vital statistics on December 6, 1995. In his license application the groom indicated that a previous marriage ended in divorce. Neither plaintiff made reference to their earlier marriage to each other. On December 23, 1995, under this new license, a justice of the peace remarried the plaintiffs. The justice of the peace properly and timely marriage certificate she issued to the Brooklyn registrar. The Brooklyn registrar, upon consultation with and advice from the Connecticut Department of Health, refused to record this marriage certificate.
The plaintiff's petition the court to order the Brooklyn registrar of vital statistics to record the marriage certificate.
Mandamus is an extraordinary remedy designed to enforce a plain duty and is reserved for those situations where the person or entity against whom the writ is sought has a clear legal obligation to act. Gelinasv. West Hartford, 225 Conn. 575, 586 (1993). The plaintiffs find such an obligation in G.S. § 7-42, which statute sets forth the duties of registrars of vital statistics. That section states "[e]ach registrar of vital statistics shall ascertain as accurately as he can all marriages . . . occurring in his town, and record the same. . . ." The plaintiffs contend that this provision, taken in conjunction with G.S. § 46b-35, which makes a marriage certificate prima facie evidence of the marriage, obligates the Brooklyn registrar to record the December 23, 1995, marriage certificate without inquiry into the validity of that marriage.
The defendants argue that, had the marriage license application revealed the plaintiffs' first marriage, no license would have issued because the 1992 marriage was never annulled nor dissolved. The defendants object to recording the 1995 marriage certificate because it would generate inaccurate records. The defendants contend that the Brooklyn registrar has discretion to look behind the certificate to check the accuracy of the information supplied.
The court agrees with the plaintiffs and holds that, under the facts of this case, the Brooklyn registrar had no discretion to refuse to record the 1995 marriage certificate. Under G.S. § 46b-34, the justice of the peace was required to return the marriage certificate she issued to the Brooklyn registrar. Section 7-42 obligates that registrar to ascertain all marriages performed in Brooklyn and record the same.
It is true that § 7-42 also requires the registrar to amend or CT Page 1966 correct any errors upon the face of the certificate. In the present case, there were no such errors in the marriage certificate. There may have been an error in the marriage license application, in that the previous marriage of the plaintiffs was omitted. The marriage license application, the license and the marriage certificate appear in one document for convenience but are of separate legal effect. The 1995 marriage certificate prepared by the justice of the peace contains no errors.
In State ex rel. Felson v. Allen, 129 Conn. 427 (1942), our Supreme Court held that the Greenwich registrar of vital statistics had the discretion to refuse to record a purported marriage. But in that case no marriage certificate was produced for recording. The identity and credentials of the officiator were unknown. The only evidence of the ersatz marriage were the statements of the couple themselves proffered twenty years later. Under those circumstances, the registrar had the discretion to determine that proof of the marriage ceremony was insufficient to merit recordation.
The current case presents a very different situation. The justice of the peace timely returned the marriage certificate. By virtue of §46b-35, the registrar has prima facie proof that the marriage was solemnized as indicated in the certificate. In the absence of evidence that the ceremony never occurred, the registrar is obliged to record the certificate.
That the validity of second marriage of the plaintiffs is in doubt is immaterial. The registrar of vital statistics does not vouch for the efficacy of the marriage; merely its occurrence in that locality. Recordation is unnecessary to solemnize the marriage, and nonrecordation does not invalidate an otherwise lawful union. Carabetta v.Carabetta, 182 Conn. 344, 348 (1980); Hames v. Hames,163 Conn. 588 (1972).
At least as to voidable marriages, the registrar, and even some of the participants, will be unaware of the infirmity. A voidable marriage is lawful until action is taken by one of the parties to the marriage to invalidate it in court. State v. Volpe, 113 Conn. 288, 290 (1931);Gould v. Gould, 78 Conn. 242, 248 (1905); Nerini v.Nerini, 11 Conn. Sup. 361, 364 (1943). The registrar records the fact of solemnization not the propriety or effectiveness of that act.
In order to prevail on this mandamus petition, the petitioners must prove that they have a clear legal right to have the Brooklyn registrar of vital statistics record the 1995 marriage certificate; that the CT Page 1967 registrar has no discretion to refuse to record the certificate; and that the petitioners have no adequate remedy at law, Schuchmann v.Milford, 44 Conn. App. 351, 358 (1997). Sections 7-42, 46b-34, and46b-35 create this clear duty and confer no discretion upon the registrar to act otherwise. No other legal remedy exists to address this refusal to record.
For these reasons, the plaintiffs' motion for summary judgment is granted, and the defendants' motion is denied. The Brooklyn registrar of vital statistics is ordered to record the marriage certificate of December 23, 1995.
Sferrazza, J.